## The Smead Foundry Co. v. Abram M. Chesbrough.

## The Smead Foundry Co. v. The Andrews & Hitchcock Iron Co.

POWER OF PRESIDENT TO ENCUMBER PROPERTY OF CORPORATION BY JUDGMENT OR OTHERWISE.

> That the president of a corporation is the owner of nearly all its capital stock, and is its superintendent and treasurer, and the active manager of its affairs, and was accustomed to borrow money for the company's use, will give him no power to encumber its property by a mortgage or judgment confessed for money borrowed.

HAYNES, J.

These causes come before us upon petitions in error, to reverse the action of the court of common pleas in refusing to set aside certain judgments in the original cases, to wit, in case 36410, and case 36412 in the court of common pleas. The record shows that in each of the cases a judgment was taken against the Smead Foundry company upon a note executed in favor of the respective plaintiffs in those actions to which was attached a cognovit or power of attorney, authorizing the confession of judgment in favor of the respective plaintiffs against the Smead Foundry company. In the first case, the note, which, in accordance with the statute was attached to the petition, read as follows:

"$10,000.00.          TOLEDO, *January 27, 1894.*

"On demand after date, for value received, we promise to pay to the order of A. M. Chesbrough and E. W. Baumgardner ten thousand dollars, with interest at the rate of seven *per centum per annum,* at ———, and we hereby authorize any

attorney at law to appear in any court of record in the United States, after the above obligations become due, and waive the issuing and service of process and confess a judgment against us in favor of the holder hereof for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal.

THE SMEAD FOUNDRY CO.,

By JNO. E. WILKISON, *Secretary.*

JULIA A. SMEAD, ISAAC D. SMEAD."

In the second case the note read as follows:

"$3,066.40.                                              TOLEDO, OHIO, *March 27, 1894.*

"One day after date, for value received, we promise to pay to the order of Andrews & Hitchcock Iron Co. three thousand and sixty-six 40-100 dollars, with interest at the rate of six *per centum per annum*, at ———, and we hereby authorize any attorney at law to appear in any court of record in the United States, after the above obligation becomes due, and waive the issuing and service of process and confess a judgment against us in favor of the holder hereof, for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal.

THE SMEAD FOUNDRY CO.,

By JNO. E. WILKISON, *Secretary.*

THE ISAAC D. SMEAD HEATING AND VENTILATING CO.,

Per JNO. E. WILKISON, *President.*"

Immediately after the judgment was taken, perhaps on the same day, a petition was filed in the court of common pleas by one or both of these plaintiffs, setting up these judgments, and praying for the appointment of a receiver of the Smead Foundry company; and thereupon Harold H. Smith was appointed a receiver of the company. A levy has been made under each of these judgments on certain property, but the receivership was not of that property alone, but of all the assets of the Foundry company. Within a few days thereafter a motion was filed by Harold H. Smith, the receiver of the Smead Foundry company, to set aside the judgment "entered herein against the defendant company on cognovit, and vacate the levies made thereunder, for the following, among other reasons, to-wit: (1) The cognovit note on which the said judgment was rendered was never authorized to be signed by said company. (2) The indebtedness evidenced by said cognovit note is not an obligation by the Smead Foundry company. (3) The said judgment is taken for more than is authorized. (4) Said judgment is contrary to law. (5) Said company has a good and valid defense to said note."

The motion in the other case is of the same tenor and effect.

Subsequently these motions came on to be heard, and the same were heard together, and also at the same time was heard a motion to set aside a judgment in another case on a cognovit. In these cases the court refused to set aside the judgment, and the petition in error herein was prosecuted for the purpose of reversing the action of the court of common pleas in refusing to set aside those judgments.

Some criticism was made that the motions were filed in the name of Harold H. Smith, receiver, and the bills of exceptions were apparently taken in the name of the Smead Foundry company. Those matters I will pass at present, and will come to the main question at issue.

The discussion of these cases took quite a wide range, but in the view that we take of the matter, the points decided will be few and brief. These judgments were taken at the April term, I think of the court of common pleas. The motions were filed at the same time, and disposed of at the same term. The cases have been discussed here as though they came under section 5354, which provides for new trials after the term. There are two sections in regard to new trials, section 5305, which states that "A new trial is a re-examination, in the same court, of an issue of fact, after a verdict by a jury, a report of a referee or master or a decision by a court;" and then it provides the reasons or grounds upon which the verdict or judgment of the court may be set aside; section 5305 pro-

vides for the filing of a motion for a new trial within the period of three days, unless for some good cause, further time is granted. Section 5354 provides that the court of common pleas may vacate or modify its own judgment or order, after the term at which the same was made, by granting a new trial, etc., as provided in section 5305, and then for certain other reasons, which are stated. It will be seen that there is no provision made in the court for entertaining a motion to set aside a judgment, vacate, or declare it void, except for the reasons that are set forth in these two motions for a new trial, and that unless some reason exists for the filing of a motion for a new trial in the court of common pleas under the first section (5305) within three days, there may intervene considerable time between that time and the close of the term of court, in which there would be no provision made, so far as the language appears upon the face of the statute, for the setting aside of a judgment. We are inclined to the opinion, however, that where an application is made after the three days, that section 5354 ought to be permitted to apply and govern. We recognize the fact ·that the supreme court has decided that at least under certain circumstances a court of common pleas has control of the judgments that have been rendered in its court during the term, while the term lasts and before final adjournment; but it seems to us that that principle of law must be taken with certain modifications and be construed consistently with the statutes which I have read. It certainly could not be intended· by the supreme court to hold or decide that the court of common pleas may, of its own motion, its own free will, set aside during the term any judgment that may be rendered in that court.

Treating this now as an application that is to be governed by the principles of 5354, the order of proceeding is before us, and has been discussed. Section 5359 relates to the mode of procedure: " The court must first try and decide upon the grounds to vacate or modify a judgment or order, before trying or deciding upon the validity of the defense or cause of action."

"SECTION 5360. A judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment was rendered; or if the plaintiff seeks its vacation, that there is a valid cause of action ; and when a judgment is modified, all liens and securities obtained under it shall be preserved to the modified judgment."

Under our view of the case, the first thing to have been done by the court of common pleas in these cases was to have decided upon the grounds to vacate or modify the judgments ; and that it did. It proceeded to hear testimony, and considerable testimony was offered in regard to the authority of the president or the secretary to sign or authorize the signing of a power of attorney to the notes in question, and having heard testimony it decided that no grounds existed to vacate the judgment. I should have said, if I have not, that it was shown in evidence that the Smead Foundry company was an incorporated company, and had been such for a considerable length of time.

The first point that is stated as a reason for setting aside the judgments was that the cognovits on which the said judgments were rendered were not authorized to be signed by said company. At this point· I will speak of the general rules of law with regard to the subject. It will be observed that the notes signed by the Smead Foundry Co. are signed by John E. Wilkison, secretary.· It will appear .from the evidence that Wilkison was directed to sign all of the notes by the president of the company.

The general rules in regard to the authority of the president of a company to sign a power of attorney for the confession of a judgment against the corporation, or directing any other person to do it, is well stated in 46 N. J. L. Rep. I cite now from 46 N. J. L. Rep., 237, *Stokes* v. *New Jersey Pottery Co.*:

"1. The president of a corporation has no power, in virtue of his office as president, to execute a bond and warrant of attorney for the entry of a judgment by confession against the corporation.

"2. The powers of the president of a corporation over its business and property are strictly the powers of an agent—powers delegated to him by the direct-

ors, who are the managers of the corporation and the persons in whom the control of its business and property is vested.

"3. The president of a corporation, organized for business purposes, is its chief executive officer, and in virtue of his office has authority to perform all acts of an ordinary nature which, by usage or necessity are incident to his office, and may bind the corporation by contracts in the usual course of business. His authority to act for the corporation may also be enlarged beyond those powers which are inherent in his office, but those are cases where the agency of the officer has arisen from the assent of the directors, from their consent and acquiescence in permitting him to assume the direction and control of its business, and are instances of the application of the principle that a principal will be liable for the acts of his agent within the apparent authority conferred upon him.

"4. That the president of a corporation is the owner of nearly all of its capital stock, and is its superintendent and treasurer and the active manager of its affairs, and was accustomed to borrow money for the company's use, will give him no power to encumber its property by a mortgage or judgment confessed for money borrowed."

To the same general purport are 33 Missouri, 377; 57 Michigan, 427; 23 Ills. Appeals, 45. Under the statutes of the state of Ohio governing corporations, the control of the business matters of the corporation is vested in the board of trustees. R. S., 3248.

Under the testimony that is offered it is shown that in the first instance the note was given for the sum of $7,500 borrowed of Chesbrough and Baumgardner. The original note had been given for the sum of $10,000, and when the note was executed it appeared they desired but $7,500, and so an indorsement was made upon the back of the note, indorsing the note down from $10,000 to $7,500; and thereupon, at the office of the attorney of Chesbrough and Baumgardner, through whom the money was borrowed, Mr. Isaac D. Smead, who was the president of the company, directed Mr. Wilkison, who was the secretary of the company, to sign the note in question in the first suit. In the other case the note was given for an amount of iron that had been sold, as it was claimed, by the Andrews & Hitchcock Iron Co. to the Smead Foundry Co., some time prior to the date of the note. So far as the power of attorney is concerned, the note and power of attorney was signed in the name of the Smead Foundry Co. by Wilkison, as secretary, and was so signed by direction of the president of the company.

It is shown that there never was any meeting of the directors of the company, nor any meeting of the stockholders of the company.

In addition to the general rule of law, the following regulation and by-law of the company appears in the testimony of the secretary :

"SECTION 4, Art. 5. The president, secretary and treasurer, or any one of them, may receive and receipt for moneys and other property for the corporation, and may, in the name and behalf of the corporation, make, sign, accept, assign, indorse, transfer and deliver, any and all bonds, notes, drafts, orders, receipts, acquittances, and other instruments for the payment of money or delivery of property; and any and all stock and mortgages, and may affix the corporate seal thereto; provided, however, that no judgment note or mortgage nor other lien shall be given or placed upon the property of the company, unless authorized by the holders of a majority of the capital stock."

It was shown on behalf of the defendants in error in each of these cases that Isaac D. Smead, the president of the company, was owner of more than one-half of the stock of the company at the time those notes were signed—something like 563 shares of the capital stock of the company—at any rate, it equaled a majority of the shares of stock. And it was claimed that by virtue of that fact there was an assent by the holders of a majority of the stock to the signing of these notes. We are not prepared to assent to that proposition. As I have already said, it is in evidence that there never was any meeting of the stockholders; the matter was never laid before the stockholders; there is no record anywhere of the assent of the stockholders, nor of the holders of a majority of the stock, to the

signing of these notes. Whatever existed of assent, existed in the mind of Mr. Smead, and whatever record there is, is to be found in his mind.

We cannot give our consent to the carrying on of the business of a corporation in that manner. If persons who carry on business under the forms of a corporation, desire to do business in a corporate name, with corporate powers, and with the exemptions that are given to the stockholders of corporations, they should at least follow the ordinary and formal rules for the carrying on of the business of the company. If it is desired to have an expression of the views of the stockholders upon any particular matter, a meeting of the stockholders should be called, where the matter can be discussed, evidence can be taken, and a record made of it, so that if any of the minority desires to make any objection legally, to protest, or to take any legal steps with regard to what is done by the majority, he would have an opportunity to do it. Therefore, without going into the facts of the case further, it is evident that there was never the legal consent of a majority of the stockholders, or of the holders of a majority of the capital stock of the company, authorizing the president to sign these names, or ratifying any action of his. And we hold that there has never been any action of the directors of the company authorizing the president or the secretary to sign these notes, nor has there ever been any ratification of that action by the directors.

Evidence is offered here on behalf of the defendants in error, that at the time these judgments were taken—if I understand it, immediately after the judgments were taken—but before the appointment of the receiver, and in view of the fact that they intended to make an application for the appointment of a receiver of the property, certain resolutions were drawn. One of these resolutions reads as follows:

"*Resolved*, By the directors of the Smead Foundry company, that the action of Isaac D. Smead, president of this company, in executing and delivering two certain judgment notes for the sum of $10,000 each, upon which there is an indorsement of $2,500 each, dated January 27, 1894, due on demand, payable to the order of A. M. Chesbrough and E. W. Baumgardener, respectively, with interest at the rate of seven *per cent per annum*, in each of which notes it is provided that said company does hereby authorize any attorney-at-law to appear in any court of record in the United States, after the above obligations become due, and waive the issuing and service of process, and confess a judgment against said company in favor of the holder thereof for the amount then appearing due, together with costs of suit, and thereupon to release all errors, and waive all right of appeal, be and the same hereby is, ratified, approved, and confirmed as the act and deed of this company."

There was also a resolution drawn in relation to the note that was given to The Andrews & Hitchcock Iron Co. The president took these and went to the office of the company, and, as he testifies, attempted to get a meeting of the directors. He sent for Harold H. Smith, who was a director. They sought for him in various places in town in which he was supposed to be, and I do not know but they got a notice to him, asking him to come to the office; but at any rate he did not come. He asked Wilkison about them, who, of course, consented, he having signed the notes at the direction of the president, and being one of the directors. Stephen P. Bolles, who was also a director, was telephoned to come there, and he came, and was met by Mr. Wilkison, the secretary, in the outer office of the company, and was asked in regard to it. He said he would be willing to approve of the resolution to Baumgardner and Chesbrough for the $7,500 of money that was actually borrowed, but not the other one; nor would he approve, as I understand it, of the resolution in favor of The Andrews & Hitchcock Iron Co. He did not see Mr. Smead, nor was Mr. Smead present, nor was there any meeting of the directors held there in reference to this matter. That is all there was of it. There was a sort of running fire, asking the consent of one and another as they happened to meet them.

No entry was ever made upon the records of the company. Smead, the president, told Wilkison, the secretary, to make a record of the meeting, showing

that Smith was present and that Bolles was present. The secretary made some notation on a piece of paper, and that was the last of it.

Under this statement of the facts of the case, we are of the opinion that the court of common pleas should have found that neither the president nor secretary of the company had any authority to sign the cognovit or power of attorney that was signed in these cases. Nor was the signature that was found there ever ratified, either by the directors of the company or by a majority of the holders of the capital stock of the company.

In regard to the statement that this motion is made on behalf of the receiver of the company and that the bills of exceptions purport to have been taken by the Smead Foundry Co., we do not think that there is any error in that that would authorize us to refuse to examine the bills of exceptions, or to refuse to grant the relief that has been asked for here. It is true that the receiver is the officer and agent—the hand, as it is sometimes called—of the court, for the taking possession of the property of the insolvent corporation. It is true also that the receiver, in the performance of his duty, is under the direction of the court. Section 5590 Revised Statutes, with regard to receivers, is as follows:

"The receiver shall have power, under the control of the court, to bring and defend actions in his own name, as receiver, to take and keep possession of the property, to receive rents, collect, compound for, and compromise demands, make transfers, and generally do such acts respecting the property as the court may authorize."

It appears that this motion was made in the court of common pleas, a court which had the full control of this receiver, and that court proceeded to hear the testimony that was adduced by the receiver upon this motion, and acted upon that. It seems to us, under that state of facts, that so far as the consent of the court was given, it was given in about as marked a manner as it could be to the action of the receiver. The receiver represents the company so far as the collection of its assets is concerned; and while the motions were made in the name of the receiver and the bills of exceptions were filed in the name of the Smead Foundry Co., we think in substance and in fact, they are applications on behalf of the foundry company to have these judgments set aside.

In regard to the other matters that have been argued here, we express no opinion. They are matters that will be and should be heard by the court of common pleas. We only find that the court of common pleas erred in deciding, under section 5355, that there was not sufficient ground to vacate the judgment I wish it to be understood right here that we do not hold that the court ought to have found that the judgment should be vacated; but for the reason that the president of the company had no authority to authorize the confession of judgment taken on this power of attorney, the court should have found that the ground existed for setting aside that judgment.

In the order of proceeding, we think it would have been better to have filed with this motion an answer setting up the defense that the company claims to have to the original suit. It is not provided by the statute that an answer shall be filed, but before the judgment is set aside the court must pass upon and adjudge that there is a valid defense to the case. After the court had found that there was ground for setting aside the judgment, it should not have proceeded, of course, to set aside the judgment. The next thing which the court should have done should have been to pass to the trial of the question as to whether there was a valid defense; and upon that, in certain cases, the parties have a right to a trial by jury.

It is suggested by Judge SCRIBNER that the question as to whether the president and secretary of the company had authority from the company—from the stockholders or the directors—to sign these notes, is a question that will still be open to be tried by the court or by a jury, when they try the case upon the validity of the defense to the original notes.

MR. BRUMBACK:  Are we to understand that the action of the court below is reversed and sent back upon the first ground that the court has suggested, viz: that the judgment should have been vacated, so far as determining the question is concerned?

THE COURT:  When you get back there, the court should make this entry, that sufficient grounds exist for setting aside that judgment.  But that don't set it aside.  Then you file your answer to the petition upon these original notes, just as you would if you had been served with process, and make up your defenses accordingly.  The court sets that down and hears it itself, or if it be a law case it is tried to a jury.

MR. BRUMBACK:  This is all new practice.

JUDGE SCRIBNER:  No; if you will read carefully the cases reported in 24 O. S., in the 25th and 46th, you will get all the information you want on that subject.  The whole subject is discussed there.

JUDGE HAYNES:  When the court finds there is a valid defense, then they set aside the judgment.

JUDGE SCRIBNER:  That they can't find in the jury case until the issues have been made up, and then you try to the jury the matters to be passed upon.

MR. BRUMBACK:  After it has got to that state, does that end the case, or is it set down for hearing then on the merits of the case again?  We have got an adjudication that the judgment should be set aside.

JUDGE KING:  On the verdict of the jury the court renders final judgment.

JUDGE HAYNES:  I think we have indicated all we ought to.  We will let the court of common pleas decide the other questions as they arise.

*E. W. Tolerton*, for Creditors.

*C. W. Everett*, for Smeads.

*King* and *Tracy*, for Creditors.

*Hurd, Brumback & Thatcher*, for Receiver.